**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DIVISION**

| | |
|---|---|
| BOARD OF FORENSIC DOCUMENT EXAMINERS, INC. (BFDE), and the following individuals who are certified by the BFDE: M. PATRICIA FISHER; LYNDA HARTWICK; ANDREW SULNER; J. MICHAEL WELDON; EMILY J. WILL; VICKIE L. WILLARD; AND ROBIN D. WILLIAMS, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN BAR ASSOCIATION, THE JUDGES' JOURNAL, and THOMAS VASTRICK, <br><br> Defendants. | No. 16-cv-2641-JPM-tmp |

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER VENUE

In this action, the Board of Forensic Document Examiners, Inc. ("BFDE") and several certified BFDE examiners sue an author and publisher for libel, false advertising under the Lanham Act, and violation of the Tennessee Consumer Protection Act. (ECF No. 1.)

Before the Court is the Motion to Dismiss or, Alternatively, to Transfer Venue, filed by Defendants American Bar Association ("the ABA"), on its own behalf and as publisher of *The Judges' Journal*, [1] and Thomas W. Vastrick (collectively "Defendants") on September 26, 2016. (ECF No. 17.) Defendants move to dismiss for lack of personal jurisdiction under

---

[1] Defendants assert that *The Judge's Journal* is an improperly named defendant, because it is a periodical owned and published by the ABA. (ECF No. 17-1 at PageID 220 n.1.)

Federal Rule of Civil Procedure 12(b)(2). (Id. at Page ID 221.) Alternatively, Defendants move to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3), or transfer to the Northern District of Illinois in accordance with 28 U.S.C. § 1404. (Id. at PageID 225.) Plaintiffs BFDE and seven document examiners certified by the BFDE—M. Patricia Fisher, Lynda Hartwick, Andrew Sulner, J. Michael Weldon, Emily J. Will, Vickie L. Willard, and Robin D. Williams (collectively, "Plaintiffs")—responded in opposition on December 2, 2016. (ECF No. 25.)

For the reasons stated below, the Court finds it has personal jurisdiction over Vastrick, but not over the ABA; venue is improper as to Plaintiffs' claims; and transfer to the Northern District of Illinois is appropriate. The Court therefore GRANTS Defendants' Motion to Dismiss or, Alternatively, to Transfer Venue (ECF No. 17), and hereby TRANSFERS this action to the Northern District of Illinois.

## I.     BACKGROUND

### A.     Factual Background

Plaintiff BFDE is a not-for-profit "forensic specialty certification board that certifies experts in forensic document examination" and is incorporated in Texas. (ECF No. 1 ¶¶ 1-2.) Out of the fourteen forensic document examiners certified by the BFDE, seven of those individuals join BFDE in this suit. (See id. ¶¶ 3-10.) Those individuals are M. Patricia Fisher, a resident of California; Lynda Hartwick, a resident of Missouri; Andrew Sulner, a resident of New York; J. Michael Weldon, a resident of Texas; Emily J. Will, a resident of North Carolina; Vickie L. Willard, a resident of Ohio; and Robin Williams, a resident of Wisconsin.

(Id. ¶¶ 4-10.)  Each of these individuals maintains his or her principal place of business in the State in which they reside.  (Id.)

Defendant the ABA is a not-for-profit "national association of the American legal profession, with over 410,000 members throughout the United States," is incorporated in Illinois, and maintains its principal place of business in Chicago, Illinois.  (Id. ¶¶ 11-12.) "Membership in the ABA is open to all attorneys, judges and law students, as well as non-lawyers interested in the law, such as paralegals, law librarians, economists, court administrators, legal academicians, and others."  (Id. ¶ 13.)  The ABA also publishes a quarterly periodical known as *The Judges' Journal*, "which it distributes locally, nationally and internationally, in regular print (hard copy) and electronic (online) formats, to its members, courts, libraries and other subscribers."  (Id. ¶ 14.)  Approximately 75 individuals in the State of Tennessee receive *The Judges' Journal*, which amounts to 0.02% of the 3,717 total recipients of the journal.  (ECF No. 25-1 at PageID 264.)

Defendant Thomas Vastrick is a forensic document examiner certified by the American Board of Forensic Document Examiners ("ABFDE"); he resides in Florida, and conducts business in both Florida and Tennessee. (See ECF No. 1 ¶¶ 16-17; ECF No. 17-1 at Page IDs 221-22; ECF No. 17-2 at PageID 231.)

Prior to August 7, 2015, Vastrick wrote and submitted for publication in *The Judges' Journal* an article entitled, "Forensic Handwriting Comparison Examination in the Courtroom" (hereinafter "Vastrick Article"). (See ECF No. 1 ¶¶ 68, 100.)  The Vastrick Article provides historical and advisory remarks for judges who utilize or will utilize forensic document examiners in trial proceedings.  (See generally ECF No. 1-5 at PageIDs 97-100.)

Plaintiff Sulner received a "pre-publication PDF copy of the not yet released printed version" of the Vastrick Article contained in the Summer 2015 Edition (Vol. 54 No.3) of *The Judges' Journal* on August 7, 2015 from the ABA.  (ECF No. 1 ¶ 65.)   Hard copies of this issue were circulated by mail on or after August 24, 2015.  (Id.)  In the interim, Sulner engaged in a back-and-forth discussion with the editorial staff for *The Judges' Journal*, expressing his concern that statements in the Vastrick Article were misleading and defamatory.  (See id. ¶¶ 101-02.)

Thereafter, Sulner continued contact with the ABA and *The Judges' Journal* staff, seeking revision of the Vastrick Article, an opportunity to rebut the article, and/or the article's removal.  (Id. ¶¶ 103-13.)  On February 18, 2016, the ABA posted a revised version of the Vastrick Article to the website.  (Id. ¶ 114.)

**B.      Procedural Background**

Plaintiffs filed their Complaint on August 5, 2016.  (ECF No. 1.)  The Complaint argues

> the Vastrick Article makes numerous false and misleading factual statements regarding how to differentiate between 'true professionals' and 'unqualified' or 'lesser qualified practitioners' . . . [and t]hese statements constitute defamation (libel) per se, and false and deceptive advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), and the Tennessee Consumer Protection Act.

(Id. ¶ 69.)

On September 26, 2016, Defendants the ABA and Thomas Vastrick filed a Motion to Dismiss or, Alternatively, to Transfer Venue.  (ECF No. 17.)

The next day, the Court held a Telephonic Scheduling Conference. (Min. Entry, ECF No. 18.) The Court then entered a Scheduling Order. (ECF No. 19.) The Court recognized in this Order that deadlines would be largely dependent on the Court's ruling on Defendant's pending motion. (See id.)

On December 2, 2016, Plaintiffs filed their response in opposition. (ECF No. 25.) On December 16, 2016, Defendants filed a Motion to Strike Declaration of Andrew Sulner. (ECF No. 26.) The same day, Defendants also filed their reply to Plaintiffs' opposition to the Motion to Dismiss or, Alternatively, to Transfer Venue. (ECF No. 25.)

On December 19, 2016, Plaintiffs filed a Response to Defendants' Motion to Strike Declaration of Andrew Sulner. (ECF No. 28.) On January 19, 2017, the Court granted Defendants' Motion to Strike Declaration of Andrew Sulner on the grounds that the affidavit improperly blended facts, legal citation, and argument of counsel. (ECF No. 29.)

## II.    DISCUSSION

### A.    Legal Standard: Motion to Dismiss for Lack of Personal Jurisdiction

The court must have personal jurisdiction over each defendant and as to each asserted claim. SunCoke Energy Inc. v. MAN Ferrostaal Aktiengesellschaft, 563 F.3d 211, 220 (6th Cir. 2009) (White, J., concurring) ("[P]ersonal jurisdiction must be proper as to each claim. . . .") A federal court looks to the state long-arm statute in which it sits to determine the appropriate limitations on personal jurisdiction, then assesses the exercise of jurisdiction, if any, under due process requirements. Federal Rule of Civil Procedure 4(k)(1)(a); see Aristech Chem. Int'l Ltd. v. Acrylic Fabricators, Ltd., 138 F.3d 624, 627 (6th Cir. 1998); CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996); Bird v. Parsons, 289 F.3d 865, 871 (6th Cir. 2002). The jurisdictional limits of Tennessee law and of the federal constitutional law of

due process are identical.  Intera Corp. v. Henderson, 428 F.3d 605, 616 (6th Cir. 2005); First

Cmty. Bank, N.A. v. First Tennessee Bank, N.A., 489 S.W.3d 369, 384 (Tenn. 2015), cert.

denied sub nom. Fitch Ratings, Inc. v. First Cmty. Bank, N.A., 136 S. Ct. 2511, 195 L. Ed. 2d

841 (2016); Tenn. Code Ann. § 20-2-223(a).[2]  Thus, the Court need only determine whether

exercising personal jurisdiction over Defendants is consistent with federal due process

requirements.  Bridgeport Music, Inc. v. Still N The Water Pub., 327 F.3d 472, 477 (6th Cir.

2003).   The due process clause requires that a non-resident defendant have at least "certain

minimum contacts with the [forum state] such that the maintenance of the suit does not offend

'traditional notions of fair play and substantial justice.'"  Youn v. Track, Inc., 324 F.3d 409,

417 (6th Cir. 2003) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

 "There are two kinds of personal jurisdiction within the Federal Due Process inquiry:

(1) general personal jurisdiction, where the suit does not arise from defendant's contacts with

the forum state; and (2) specific jurisdiction, where the suit does arise from the defendant's

contacts with the forum state."  Conn v. Zakharov, 667 F.3d 705, 712–13 (6th Cir. 2012).

General jurisdiction allows a plaintiff to sue a defendant "on any and all claims," regardless of

the connection (or lack thereof) between the claim and the forum.  Maxitrate Tratamento

Termico E Controles v. Super Sys., Inc., 617 F. App'x 406, 408 (6th Cir.), cert. denied sub

nom. Maxitrate Tratamento Termico E Controles v. Allianz Seguros S.A., 136 S. Ct. 336, 193

---

[2] Tenn. Code Ann. § 20-2-223(a) states in pertinent part:
 (a) A court may exercise personal jurisdiction over a person, who acts directly or indirectly, as
to a claim for relief arising from the person's:
  (1) Transacting any business in this state;
  (2) Contracting to supply services or things in this state;
  (3) Causing tortious injury by an act or omission in this state;
  (4) Causing tortious injury in this state by an act or omission outside this state of the
  person who regularly does or solicits business, or engages in any other persistent
  course of conduct, or derives substantial revenue from goods used or consumed or
  services rendered, in this state;
 . . . .

L. Ed. 2d 231 (2015)  (citing <u>Daimler AG v. Bauman</u>, —— U.S. ——, 134 S. Ct. 746, 769

(2014)).  Specific jurisdiction, by contrast, "exposes the defendant to suit in the forum state

only on claims that arise out of or relate to a defendant's contacts with the forum."  <u>Kerry

Steel, Inc. v. Paragon Indus., Inc.</u>, 106 F.3d 147, 149 (6th Cir. 1997).  That is, when alleged

contacts fall short of being "continuous and systematic," those contacts may still support the

exercise of specific jurisdiction if they relate to the cause of action.  The Sixth Circuit Court

of Appeals has set out a three-part test for determining when specific jurisdiction exists:

> First, the defendant must purposefully avail [himself] of the privilege of acting
> in the forum state or causing a consequence in the forum state.  Second, the
> cause of action must arise from the defendant's activities there.  Finally, the
> acts of the defendant or consequences caused by the defendant must have a
> substantial enough connection with the forum state to make the exercise of
> jurisdiction over the defendant reasonable.

<u>S. Mach. Co. v. Mohasco</u>, 401 F.2d 374, 381 (6th Cir. 1968);[3] <u>see also</u> <u>Harmer v. Colom</u>, 650

F. App'x 267, 272 (6th Cir. 2016).

When a defendant challenges personal jurisdiction under Federal Rule of Civil

Procedure 12(b)(2), "[t]he plaintiff bears the burden of making a prima facie showing of the

court's personal jurisdiction over the defendant."  <u>Intera Corp. v. Henderson</u>, 428 F.3d 605,

615 (6th Cir. 2005).  A plaintiff "can meet this burden by 'establishing with reasonable

particularity sufficient contacts between [a defendant] and the forum state to support

jurisdiction.'"  <u>Neogen Corp. v. Neo Gen Screening, Inc.</u>, 282 F.3d 883, 887 (6th Cir. 2002)

---

[3] Since the Sixth Circuit espoused this test, the Tennessee Long Arm Statute changed "from a 'single act' statute [in which jurisdiction was assumed only over causes of action arising out of the defendant's activities in the state] to a 'minimum contacts' statute which expanded the jurisdiction of Tennessee courts to the full limit allowed by due process."  <u>UPS v. Buck Fever Racing, Inc.</u>, No. 03A01-9609-CH-00288, 1996 WL 739296, at *2 (Tenn. Ct. App. Dec. 24, 1996).  Nonetheless, the three-part test is "to be considered in determining whether the requisite minimum contacts [are] present. . . ." <u>Id.</u>

(quoting Provident Nat'l Bank v. Cal. Fed. Sav. Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987)).

When the court does not conduct an evidentiary hearing on the issue of personal jurisdiction, it must "not consider the facts proffered by the defendant that conflict with those offered by the plaintiff, and will construe the facts in the light most favorable to the nonmoving party." Id. (citation omitted).

B.      **Analysis: Motion to Dismiss for Lack of Personal Jurisdiction**

1.      **Personal Jurisdiction as to the Defendants**

Defendants argue that the Court has neither general nor specific jurisdiction over them. (ECF No. 17-1 at PageIDs 221-224.)   Plaintiffs contend the Court has both.  (ECF Nos. 25 at PageID 254; 25-1 at PageIDs 254, 258-59, 264.)   The Court assesses the propriety of both forms of personal jurisdiction as to each defendant.

**i. General Jurisdiction**

**a.      Vastrick**

To prove general jurisdiction, Plaintiffs must show Defendant Vastrick's contacts with Tennessee are so "continuous and systematic" that Plaintiffs are entitled to bring a cause of action unrelated to Vastrick's contacts with Tennessee.  Defendants contend Vastrick has no such systematic or continuous contact with Tennessee because he resides in Florida, where he also has his principal place of business.  (ECF No. 17-1 at Page IDs 221-22 (citing ECF No. 17-2 ¶¶ 2-6).)  Vastrick contends his only ties to Tennessee are a P.O. Box at a UPS Store in Memphis, Tennessee and a phone number with a (901) area code.  (Id.)  Plaintiffs argue Vastrick's ties with Tennessee are systematic and continuous because he maintains a business

here and holds himself out as a Memphis, Tennessee document examiner. (ECF No. 25 at PageID 254 (citing Exhibits 3-4).)

Unable to "consider the facts proffered by the defendant that conflict with those offered by the plaintiff, and [ ] constru[ing] the facts in the light most favorable to the nonmoving party," <u>Neogen</u>, 282 F.3d at 887, the Court finds the following contacts sufficient to exercise general jurisdiction over Vastrick. In the past three years, Vastrick has published a classified ad in the Tennessee Bar Journal, which reads in relevant part: "Tennessee's only full-time ABFDE-certified full-time document examiner. . . . Thomas Vastrick, 6025 Stage Road, Suite 42-309, Memphis, TN 38134; (901) 383-9282." (ECF No. 25 at PageID 254 (citing Exhibits 3-4).) Vastrick conveys additional ties to his business in Tennessee in past articles, which include footnotes that state, "Thomas W. Vastrick is a forensic document examiner in private practice in Memphis, with 28 years of experience in the field" and/or list his Memphis mailing address. (ECF No. 25-4 at PageIDs 386.) Vastrick testifies that he lists this Memphis business address, even though it is not a physical office. (ECF No. 17-2 ¶ 6; <u>see also</u> ECF No. 25-3 at PageID 378.) Over the last four years, Vastrick visited "Memphis on business approximately once a year on average. . . ." (ECF No. 17-2 at PageID 231.) Also, 42% of Vastrick's disclosed business in the past 18 years took place in Tennessee, and while his current business is concentrated in Florida, Vastrick has consistently maintained business in Memphis, Tennessee. (ECF No. 25-1 at PageIDs 258-59; ECF No. 27 at PageIDs 473-74.)

The Court therefore finds the facts in the light most favorable to the nonmoving party demonstrate Vastrick's contacts in Tennessee are so "continuous and systematic" that personal jurisdiction is proper, regardless of the relationship between the nature of this suit and Vastrick's contacts with Tennessee. Having found general jurisdiction proper, the Court

need not address whether specific jurisdiction exists over Vastrick as to each of the claims in the Complaint.

### b. The ABA

Plaintiffs contend general jurisdiction over Defendant ABA is proper in part due to its circulation of *The Judges' Journal* in the stream of commerce. (ECF No. 25 at PageID 254 (citing Exhibits 1, 12, 13)[4]; see also ECF No. 25-1 at PageID 258.)  In essence, Plaintiffs allege that because *The Judges' Journal* reaches "approximately 75 recipients in Tennessee, or (0.02%) of its 3,717 recipients" (ECF No. 25-1 at PageID 264), any plaintiff is authorized to sue the ABA in Tennessee on any and all claims.  (See id. at PageID 258.)  The Court disagrees.

The facts in the light most favorable to the nonmoving party do not demonstrate that the ABA's contacts in Tennessee are so "continuous and systematic" that they subject the ABA to causes of action unrelated to the ABA's contacts with Tennessee.  To exercise general jurisdiction over the ABA, the ABA's affiliations with Tennessee must be "so constant and pervasive 'as to render [it] essentially at home'" in Tennessee.  Daimler AG v. Bauman, 134 S. Ct. 746, 751, 187 L. Ed. 2d 624 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. ——, 131 S.Ct. 2846 (2011)).  The evidence, however, supports a contrary finding.  Distribution of *The Judges' Journal* into Tennessee, alone, does not render the ABA 'at home' in Tennessee.  The Supreme Court has held that,

---

[4] On January 9, 2016, the Court struck the Declaration of Andrew Sulner, attached to Plaintiffs' Memorandum in Opposition of Motion to Dismiss, or Alternatively, to Transfer Venue (ECF Nos. 25-2), for making inadmissible statements that blended facts, legal citations, and argument. (ECF No. 29.)  Consequently, the Court does not refer to this declaration or its supporting exhibits in support of Plaintiffs' argument.

> "the placement of a product into the stream of commerce 'may bolster an affiliation germane to specific jurisdiction,' . . . [but] such contacts 'do not warrant a determination that, based on those ties, the forum has *general* jurisdiction over a defendant.' . . . [Moreover,] a corporation's 'continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'"

Daimler, at ——, 131 S.Ct. at 757 (quoting Goodyear, 564 U.S. ——, 131 S.Ct. at 2850; and quoting Int'l Shoe, 326 U.S. at 318.)

Aside from *The Judges' Journal*, Plaintiffs have failed to proffer other affiliations the ABA may have with Tennessee. The evidence instead demonstrates that the ABA is "an Illinois not for profit corporation with its principal place of business in Chicago," it "does not have any business address or office location in Tennessee, and holds no bank accounts or property in Tennessee." (ECF No. 17-1 at PageID 222.) For these reasons, the Court does not have general jurisdiction over the ABA in Tennessee.

Without general jurisdiction, the exercise of personal jurisdiction over a defendant becomes claim-specific, meaning the plaintiff "must establish specific jurisdiction for each claim." Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 274 (6th Cir. 2006) (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 3d § 1351, at 299 n.30 (2004) ("There is no such thing as supplemental specific personal jurisdiction; if separate claims are pled, specific personal jurisdiction must independently exist for each claim and the existence of personal jurisdiction for one claim will not provide the basis for another claim.")). Personal jurisdiction over the ABA, therefore, hinges on whether there is specific jurisdiction over the ABA as to each claim asserted against it. The Court thus addresses each claim asserted against the ABA in turn.

## ii.     Specific Jurisdiction Over the ABA

In the instant case, Plaintiffs allege six causes of action against Defendants, including the ABA, which fall within three categories: (1) "False Advertising: Violation of Lanham Act, 15 U.S.C. § 1125(a)(1)," (2) "Deceptive Business Practices: Tennessee Consumer Protection Act," and (3) "Defamation/Libel Per Se/Invasion of Privacy/False Light."  (ECF No. 1 ¶¶ 150-93.)  Defendants generally contend there is no personal jurisdiction over the ABA because it is an Illinois corporation, with a principal place of business in Chicago, and without "any business address or office location in Tennessee, and holds no bank accounts or property in Tennessee."  (ECF No. 17-1 at PageID 222.)   Defendants also assert that this action is

> based upon an article written, edited and published outside of Tennessee with no connection to Tennessee . . . [and] [t]he great majority of the work associated with reviewing, editing and publication of the article . . . also occurred in Chicago, although some review occurred in Erie, Pennsylvania by Judge Stephanie Domitrovich, a member of *The Judges' Journal* Editorial Board.

(Id. at PageIDs 223-24.)  Plaintiffs argue the ABA should be brought into Court in Tennessee under the three-part specific jurisdiction test: (1) purposefully availment, (2) arising from, and (3) reasonableness.  (See ECF No. 25-1 at PageID 262.)   Applying this test, Plaintiffs contend the ABA (1) "purposefully availed [itself] by regularly and intentionally placing *The Judges' Journal* in the stream of commerce to reach approximately 75 recipients in Tennessee, or (0.02%) of its 3,717 recipients," that (2) "the claim arises out of both defendants' contacts with this forum," and therefore (3) "the exercise of personal jurisdiction over the Defendants is clearly permissible, reasonable, and foreseeable."  (Id. at PageIDs 262-64.)   For the reasons stated below, the Court finds that it lacks specific jurisdiction over the ABA as to each claim asserted against it.  The Court first employs the three-part specific jurisdiction test for

Plaintiffs' false advertising and deceptive business practice claims, and then employs a modified specific jurisdiction test for Plaintiffs' libel claim.

### a. False Advertising: Violation of Lanham Act, 15 U.S.C. § 1125(a)(1)

The Court finds that it lacks specific jurisdiction over the ABA for Plaintiffs' False Advertising: Violation of Lanham Act, 15 U.S.C. § 1125(a)(1) claim because the "purposeful availment" prong of the specific jurisdiction test is not satisfied.

The "purposeful availment" prong assesses whether "the defendant has [intentionally] engaged in some overt actions connecting the defendant with the forum state" such that the defendant would anticipate being brought into court there. Fortis Corporate Ins. v. Viken Ship Mgmt., 450 F.3d 214, 218 (6th Cir. 2006) (citations and quotation marks omitted); Beydoun v. Wataniya Restaurants Holding, Q.S.C., 768 F.3d 499, 506 (6th Cir. 2014). "[P]urposeful availment is something akin to a deliberate undertaking to do or cause an act or thing to be done in [the forum state] or conduct which can be properly regarded as a prime generating cause of the effects resulting in [the forum state], something more than a passive availment of [the forum state's] opportunities." Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 891 (6th Cir. 2002) (internal citation and quotation omitted).

In the instant case, Plaintiffs claim the ABA falsely represented the nature or qualities of services in violation of the Lanham Act. (ECF No. 1 ¶¶ 178-87.) Although the Sixth Circuit has held that "the 'actual content' of the communications into the forum state that give rise to an *intentional* tort action *may* constitute purposeful availment," Intera Corp. v. Henderson, 428 F.3d 605, 616 (6th Cir. 2005) (emphasis added) (citing Neal v. Janssen, 270 F.3d 328, 332 (6th Cir. 2001)), intent is not required to bring a false description or

representation claim under the Lanham Act.[5]  As a result, the ABA's mere circulation of the

Vastrick Article in the State of Tennessee does not automatically constitute purposeful

availment.

   The Court therefore must look to the admissible evidence to determine whether the

ABA purposefully availed itself of the State of Tennessee.  The evidence does not support a

finding that the ABA actively and deliberately targeted Tennessee.  *The Judge's Journal* is a

"quarterly journal" distributed "locally, nationally and internationally, in regular print (hard

copy) and electronic (online) formats, to its members, courts, libraries and other subscribers."

(ECF No. 1 ¶ 14.)  Per issue, approximately 0.02% of all copies reach Tennessee.  (ECF No.

25-1 at PageID 264.)   But, as this Court held in Odyssey Med., Inc. v. Augen Opticos, S.A.

de C.V., mere receipt of nationally distributed material alone is insufficient to establish

purposeful availment.  No. 10-2797, 2011 WL 4478873, at *8 (W.D. Tenn. Sept. 26, 2011).

   In Odyssey, this Court held that a defendant's targeted emails to Tennessee

residents—specifically to Tennessee ophthalmologists—"sent as part of a national advertising

campaign [were not] *sufficiently targeted [at Tennessee]* to . . .  establish purposeful

availment" of Tennessee.  Id. at * 8 (emphasis added).  Similarly, in the instant case, *The

Judge's Journal* targets the ABA's national and international members, courts, libraries and

other subscribers, which includes some Tennessee recipients.  Plaintiffs have not shown,

however, that the journal or the Vastrick Article itself were sufficiently targeted at Tennessee

---

[5] See, e.g., Parkway Baking Co. v. Freihofer Baking Co., 255 F.2d 641, 648, 117 U.S.P.Q. 426 (3d Cir. 1958) ("[T]here is no requirement that the falsification occur willfully and with intent to deceive."); Johnson & Johnson v. Carter-Wallace, Inc., 631 F.2d 186, 189, 208 U.S.P.Q. 169 (2d Cir. 1980) (Lanham Act 43(a) "does not require proof of intent to deceive. . . ."); Grant Airmass Corp. v. Gaymar Industries, Inc., 645 F. Supp. 1507, 1513 (S.D. N.Y. 1986) ("Proof of intent to deceive is not required."); Vector Products, Inc. v. Hartford Fire Ins. Co., 397 F.3d 1316, 1319, (11th Cir. 2005) ("It is well-settled that no proof of intent or willfulness is required to establish a violation of Lanham Act § 43(a) for false advertising."); CGS Industries, Inc. v. Charter Oak Fire Ins. Co., 720 F.3d 71, 83, 107 U.S.P.Q.2d 1678, 1678 (2d Cir. 2013) (Sec. 43(a) claim does "not require proof of intent to deceive.").

to support purposeful availment of Tennessee. Nor have Plaintiffs provided "more evidence that [the ABA] has 'create[d] a substantial connection' to Tennessee." Id. (internal quotation marks omitted) (quoting Ford Motor Co. v. Great Domains, Inc., 141 F. Supp. 2d 763, 772 (E.D. Mich. 2001)).

The facts here also contrast with cases where a defendant "purposefully directs communications into the forum that cause injury within the forum, and those communications form the 'heart' of the cause of action" as found by the Sixth Circuit in Neal v. Janssen. 270 F.3d 328, 333 (6th Cir. 2001); cf. Simplex Healthcare, Inc. v. Marketlinkx Direct, Inc., 761 F. Supp. 2d 726, 733 (M.D. Tenn. 2011). In Neal, Tennessee plaintiffs contracted with a non-resident defendant to sell a horse on the plaintiffs' behalf. Id. at 330. The defendant sent false information to plaintiffs in Tennessee by phone and fax about the horse's value and sale. 270 F.3d at 331- 32. "These false representations [were] the heart of the lawsuit—they were not merely incidental communications sent by the defendant into Tennessee." Id. at 332. The Neal Court found the defendant purposefully availed himself of the State of Tennessee. Id. By contrast, the distribution of The Judge's Journal into Tennessee in the instant case was incidental. It was not anchored by a previous business transaction or contract with the recipients. Also, the journal's contents—namely, the Vastrick Article—though the basis for this cause of action, were not exclusively directed to Tennessee residents or activities. Thus, Tennessee's mere receipt of The Judge's Journal, without more, is not purposeful availment.

Having found the ABA did not purposefully avail itself of Tennessee under Plaintiffs' Lanham Act claim, the Court need not discuss the "arising from" or "reasonableness" prongs. Accordingly, the Court finds no specific jurisdiction over the ABA for Plaintiffs' False Advertising: Violation of Lanham Act, 15 U.S.C. § 1125(a)(1) claim.

**b. Deceptive Business Practices: Tennessee Consumer Protection Act**

The Court also finds for the reasons stated below that it does not have specific jurisdiction over the ABA for Plaintiffs' Deceptive Business Practices: Tennessee Consumer Protection Act claim because the "purposeful availment" prong of the specific jurisdiction test is not satisfied.

Plaintiffs assert that the ABA is liable for deceptive business practices under the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-104(b). (See ECF No. 1 ¶ 147.) "To assert a claim pursuant to the [Tennessee Consumer Protection Act, Tenn. Code Ann. § 47–18–109(a),] the [Plaintiffs] must establish that the [ABA] engaged in tortious conduct and that the [Plaintiffs were] exposed/subject to the tortious conduct." Beard v. Worldwide Mortg. Corp., 354 F. Supp. 2d 789, 815 (W.D. Tenn. 2005) (citing Harvey v. Ford Motor Credit Co., 8 S.W.3d 273, 276 (Tenn.Ct.App.1999)). "[I]ntent is not required" to bring a Tennessee Consumer Act Protection Act claim, Menuskin v. Williams, 145 F.3d 755, 767 (6th Cir. 1998), and thus the mere fact that the ABA circulated the Vastrick Article within the State of Tennessee by dissemination of *The Judge's Journal* does not automatically constitute purposeful availment. Cf. Intera Corp. v. Henderson, 428 F.3d 605, 616 (6th Cir. 2005) ("[T]he 'actual content' of the communications into the forum state that give rise to an *intentional* tort action *may* constitute purposeful availment") (emphasis added).

Additionally, as stated above, the mere receipt of *The Judge's Journal* in Tennessee, without more, does not constitute purposeful availment. Plaintiffs also failed to proffer additional evidence to support a finding of purposeful availment. The Court therefore finds the ABA did not purposefully avail itself of the State of Tennessee under Plaintiffs'

Tennessee Consumer Protection Act claim. Having found the first prong of the specific jurisdiction test unsatisfied, the Court need not discuss the "arising from" or "reasonableness" prongs. Accordingly, the Court finds no specific jurisdiction over the ABA for Plaintiffs' Tennessee Consumer Protection Act claim.

### c. Defamation/Libel Per Se/Invasion of Privacy/False Light

In a case for defamation or libel, the court may modify or supplement the specific jurisdiction test with either the "adequate circulation," <u>Keeton v. Hustler Magazine, Inc.</u>, 465 U.S. 770, 773–74, 781 (1984), or the "effects" test, <u>Calder v. Jones</u>, 465 U.S. 783 (1984). The "adequate circulation" test evaluates whether there is a sufficient level of circulation in the state such that the publisher's contact with the state is not random, isolated, or fortuitous. The "effects" test requires a case-by-case analysis of the purpose and impact of the publication in question.

The Court finds for the reasons stated below that it does not have specific jurisdiction over the ABA for Plaintiffs' Defamation/Libel Per Se/Invasion of Privacy/False Light claim because the ABA's circulation of the Vastrick Article into Tennessee fails both the "adequate circulation" and "effects" tests.

### 1. Adequate Circulation Test

The "adequate circulation" test hinges on the level of circulation in the forum state. The <u>Keeton</u> Court found that an "adequate" level of circulation of a publication in the forum state was sufficient to support an exercise of jurisdiction over the publisher because the publisher could "reasonably anticipate being haled into court there." 465 U.S. at 773–74, 781 (finding defendant magazine purposefully availed itself by making monthly sales of 10,000 to

15,000 copies of its publication in the forum state). To succeed under the "adequate circulation" test, courts require publications with "significant levels of circulation in the state where the plaintiff seeks to bring suit." Fielding v. Hubert Burda Media, Inc., 415 F.3d 419, 425 (5th Cir. 2005) (citing Keeton, 465 U.S. at 772, 774; Calder, 465 U.S. at 785, 788-90) (finding Hustler Magazine purposefully availed itself to New Hampshire forum by making sales of 10,000 to15,000 magazines to New Hampshire each month).

The Court finds that the ABA's circulation of *The Judges' Journal* does not satisfy the "adequate circulation" test. The ABA's quarterly circulation of *The Judges' Journal* in Tennessee, per issue, amounts to 75 recipients, "or (0.02%) of its 3,717 recipients." (ECF Nos. 1 ¶ 14; 25-1 at PageID 264.) Seventy-five copies per issue do not constitute the "substantial number of copies" that makes it fair to exercise jurisdiction over a non-resident publisher as discussed in Keeton. 465 U.S. at 78; see also Fielding, 415 F. 3d at 425. Moreover, this small fraction of *The Judges' Journal*'s total circulation is insignificant compared to the 10,000 to 15,000 copies of a monthly publication found to justify jurisdiction in Keeton. 465 U.S. at 78. Thus, the Court finds that the ABA's circulation of *The Judges' Journal* in Tennessee falls markedly short of the "adequate circulation" standard set out by the Supreme Court.

## 2. Effects Test

The "effects" test evaluates the purpose and impact of the publication in question. In Calder, the Supreme Court found specific jurisdiction over a publisher proper where it "aimed" a story at the state knowing that the "effects" of the story would be felt there. 465 U.S. at 789–90 (holding Florida-based publisher of a newspaper purposefully availed itself of

the California forum because the publisher had its largest circulation in California and the published article allegedly defamed a Californian plaintiff).  To establish personal jurisdiction under the Calder "effects" test, a plaintiff must show that: (1) the defendant committed defamation; (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the resulting harm; and (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.  IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 261-66 (3d Cir. 1998) (finding support for "effects" test requirements in First, Fourth, Fifth, Eighth, Ninth, and Tenth Circuit Courts of Appeals precedent); see also Reynolds v. Int'l Amateur Athletic Fed'n, 23 F.3d 1110, 1120 (6th Cir. 1994) (applying Calder "effects" test in defamation case).  In some circuits, the brunt of harm need not be suffered in the forum state if a jurisdictionally sufficient amount of harm is suffered in the forum state.  Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199 (9th Cir. 2006).

In this circuit, "[w]hen the actual content of the communications into the forum gives rise to an intentional tort action, that alone *may* constitute purposeful availment.  It is the *quality* of the contacts, not the quantity, that determines whether they constitute 'purposeful availment.'"  Neal v. Janssen, 270 F.3d 328, 332 (6th Cir. 2001) (emphasis added) (citing LAK, Inc. v. Deer Creek Enter., 885 F.2d 1293, 1301 (6th Cir.1989)).  The Sixth Circuit's ultimate determination for personal jurisdiction in intentional tort actions, however, also considers the "effects" test elements.  See Koch v. Local 438, United Autoworkers Union, 54 F. App'x 807, 812 (6th Cir. 2002) (finding personal jurisdiction for defendant who knew plaintiff's professional reputation centered in Tennessee, whose statements at an executive board meeting played a role in the ultimate decision to draft the letter at issue, and whose

actions clearly intended to affect plaintiff in Tennessee); Reynolds, 23 F.3d at 1120 (finding

defendant did not purposefully avail itself of Ohio by publishing a press release concerning

plaintiff because the press release did not concern plaintiff's activity in Ohio, plaintiff's

reputation was not centered in Ohio, defendant did not know of plaintiff's Ohio contacts,

defendant did not itself publish or circulate the press release in Ohio, and the press release did

not directly defame plaintiff); Schneider v. Hardesty, 669 F.3d 693, 703 (6th Cir. 2012)

(finding defendant purposefully availed himself of Ohio by drafting the letters with false and

misleading representations, because he knew of their intended purpose, knew or should have

known they were bound for an investor in Ohio, knew Plaintiff lived in Ohio, and was "the

key actor in directing the harm inflicted on the recipients").

In the instant case, the Court also finds that, unlike the defendants in Calder, the ABA

did not "aim" its actions at Tennessee knowing that the "effects" of the Vastrick Article would

be felt here.  Plaintiffs allege that the actual content of the Vastrick Article gives rise to their

libel claim (ECF No. 25-1 at 264), but the Court finds that the content alone fails to constitute

purposeful availment in this case.  The Vastrick Article neither directly mentioned any of the

plaintiffs by name nor considered activity exclusively conducted in Tennessee.  (See ECF No.

1-15.)  Nor did the ABA exclusively send the Vastrick Article to Tennessee; rather, the ABA

distributed the Vastrick Article "in Tennessee and throughout the rest of the United States and

world" (ECF No. 1 ¶ 154), to the ABA's local, national, and internal "members, courts,

libraries and other subscribers" (ECF No. 1 ¶ 14).  Also, the journal's circulation in Tennessee

is not significant—as it reaches only "approximately 75 recipients. . . ."  (ECF No. 25-1 at

PageID 264.)  These facts do not support a finding that the ABA "aimed" the Vastrick Article

at Tennessee.

Additionally, the facts do not support a finding that the ABA knew the "effects" of the article would be felt in Tennessee, because none of the named plaintiffs are citizens of Tennessee nor do their reputations principally center in Tennessee. (<u>See</u> ECF No. 1 ¶¶ 1-10, 64.) Rather, the Plaintiffs are citizens of Texas, California, Missouri, New York, North Carolina, Ohio, and Wisconsin, and each "possessed a good local and national reputation as [] forensic document examiner[s]." (<u>Id.</u>) The Complaint alleges that statements in the Vastrick Article "made and published by the Defendants had, and continues to have, a defamatory and fallacious effect because it has impugned the professional reputation and standing of Plaintiffs and has had an adverse effect upon their business interests and reputations as forensic document examiners." (<u>Id.</u> ¶ 155.) In other words, Plaintiffs allege injury to their local and national reputation, rather than to any specific reputation centered in Tennessee.

In fact, the evidence indicates only two named plaintiffs have direct ties to Tennessee: Will and Willard. Plaintiff Will "advertised with online expert witness directories that specifically targeted Tennessee attorneys and individuals residing in the State of Tennessee . . . [and has] been retained as an expert witness in Tennessee multiple times." (ECF No. 25-6 ¶¶ 1-2.) Following the Vastrick Article's distribution, however, Will does not express if or how her reputation in Tennessee was directly impacted. Rather, she states, "[the Vastrick Article] *could reasonably* impact [her] credibility within a state to which [she] reside[s] in near proximity, and within which [she] regularly advertise[s] and routinely practice[s], . . . [and her] *reputation [is] directly impacted* by the attempts therein to discredit the merit of [her] accreditation, and *may have the result of* reducing the likelihood of providing competitive opinions" in future cases. (ECF No. 25-6 ¶ 4.) It is unclear from this declaration whether Will has suffered any injury or degradation to her reputation specifically in Tennessee.

Plaintiff Willard also asserts that she "regularly advertise[s] with online expert witness directories that specifically target Tennessee attorneys and residents." (ECF No. 25-7 ¶ 6.) Willard does not, however, claim she suffered any reputational damage in Tennessee or any other State. This evidence fails to prove either that the brunt of the harm was felt in Tennessee or that "a jurisdictionally sufficient amount of harm suffered" in Tennessee. Yahoo!, 433 F.3d at 1207.

The ABA also could not have known that the article's "effect" would be felt in Tennessee because none of the plaintiffs' reputations are centralized in Tennessee and no evidence suggests the ABA knew of the plaintiffs' Tennessee contacts. The Court therefore finds the ABA's national and international distribution of *The Judges' Journal* that contained the Vastrick Article could not have furnished the ABA with a reasonable anticipation of being haled into court in Tennessee.

For the reasons stated above, the Court finds the ABA's circulation of *The Judge's Journal* or Vastrick Article into Tennessee fails both the "adequate circulation" and "effects" tests. Accordingly, the Court need not discuss the reasonableness requirement of specific jurisdiction for Plaintiffs' Defamation/Libel Per Se/Invasion of Privacy/False Light claim.

In sum, the Court finds it has general jurisdiction over Vastrick, but lacks both general and specific jurisdiction over the ABA. The Court now turns to venue.

## C. Legal Standard: Motion to Dismiss for Improper Venue and Transfer

Defendants alternatively move to dismiss Plaintiffs' claims for improper venue under Federal Rule of Civil Procedure 12(b)(3). (ECF No. 17.) For a motion to dismiss under Federal Rule of Civil Procedure 12(b)(3), the burden is on the plaintiff to prove venue is

proper.  See 14D Charles Alan Wright, et al., Federal Practice and Procedure, § 3826 (3d ed. 2012) (noting the position "that probably represents the weight of judicial authority, is that, when an objection has been raised, the burden is on the plaintiff to establish that the district he or she has chosen is a proper venue"); see also Gone To The Beach, LLC v. Choicepoint Servs., Inc., 434 F.Supp.2d 534, 536–37 (W.D. Tenn. 2006) (On a 12(b)(3) motion to dismiss, "the plaintiff bears the burden of proving that venue is proper.").  On a motion to dismiss for improper venue, the court may examine facts outside the complaint but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff.  Thurman v. Michael W. Boyd Law Firm, No. 12-2709-JDT-TMP, 2013 WL 1103645, at *2 (W.D. Tenn. Mar. 15, 2013)  (quoting Receiver of the Assets of Mid–Am. Energy, Inc. v. Coffman, 719 F.Supp.2d 884, 890 (M.D. Tenn. 2010)).

Venue is proper in the Western District of Tennessee if this action satisfies the requirements of 28 U.S.C. § 1391.  This general venue statute delineates separate requirements where subject matter arises from diversity of citizenship versus federal question. Under the statute, venue is proper in a diversity case in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(a)(2).  In federal question cases, venue is proper in:

> (1) A judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) A judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) If there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b); Thurman v. Michael W. Boyd Law Firm, No. 12-2709-JDT-TMP, 2013 WL 1103645, at *2 (W.D. Tenn. Mar. 15, 2013). "[I]f a lawsuit has both diversity and federal question jurisdiction, even if only diversity is pled as the ground for jurisdiction, the venue restrictions for federal question jurisdiction apply." Union Planters Bank, N.A. v. EMC Mortgage Corp., 67 F.Supp.2d 915, 918 (W.D. Tenn. 1999) (citations omitted).

In the instant case, Plaintiffs assert both federal question and diversity of citizenship jurisdiction (ECF No. 1 at PageID 6), and thus the Court assesses all of Plaintiffs' claims under "the venue restrictions for federal question jurisdiction." Union Planters, 67 F.Supp.2d at 918.

If a defendant prevails on a Rule 12(b)(3) challenge, the court may dismiss the action, or transfer it to an appropriate court pursuant to 28 U.S.C. § 1406(a). Van Dusen v. Barrack, 376 U.S. 612, 634 (1964) ("[Section] 1406(a) provides for transfer from forums in which venue is wrongly or improperly laid, whereas, in contrast, [section] 1404(a) operates on the premises that the plaintiff has properly exercised his venue privilege."); cf. Flynn v. Greg Anthony Constr. Co., 95 F. App'x 726, 738 (6th Cir. 2003) (applying § 1406 when personal jurisdiction was lacking over party); see also 28 U.S.C. § 1404(a). Dismissal is appropriate where there is no plausible reason for failing to originally file in a court with proper venue. Stanifer v. Brannan, 564 F.3d 455, 458 (6th Cir. 2009) (affirming district court's dismissal under section 1406(a) because plaintiff "failed to offer even one reason, plausible or not, for filing in what was obviously the wrong venue—and no reason at all for failing to file in the proper district.").

If the court decides to transfer under § 1406(a), however, it must send the case to a "district or division in which it could have been brought." Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466-67 (1962). This requires that the transferee forum have proper venue and personal jurisdiction over the parties. Id.

## D. Analysis: Motion to Dismiss for Improper Venue and Transfer

The parties only address the propriety of venue generally rather than as to each claim, even though courts in this Circuit hold that "[i]f a plaintiff asserts multiple claims against a defendant, venue must be proper as to each claim." Reilly v. Meffe, 6 F. Supp. 3d 760, 765 (S.D. Ohio 2014) (citing Pioneer Surgical Tech., Inc. v. Vikingcraft Spine, Inc., No. 2:09–CV–271, 2010 WL 2925970, at *2 (W.D. Mich. July 21, 2010)); accord, Cunningham v. MEC Enterprises, Inc., No. 10-13409, 2011 WL 1869911, at *1 (E.D. Mich. Apr. 20, 2011); Nine Point Mesa of Nashville, Inc. v. Nine Point Mesa of Lexington, Inc., 769 F. Supp. 259, 263 (M.D. Tenn. 1991). Because all of the asserted claims arise from the same facts, the Court consolidates its claim-by-claim determination of venue. That is, the following determination applies with equal force to each claim asserted by Plaintiffs.

In the instant case, Defendants argue that this action should be dismissed in its entirety because none of the three statutory factors for proper venue are satisfied. (ECF No. 17-1 at PageID 224.) "First, Defendants do not 'reside' in Tennessee." (Id.) The ABA is an Illinois corporation with its principal place of business in Chicago, Illinois, and Vastrick resides and has his principal place of business in Florida. (Id. (citing ECF No. 1 ¶ 11).) "Second, none of the events giving rise to this incident occurred in the Western District of Tennessee (or anywhere in Tennessee)." (Id.) Third, "this suit could have been brought in any of the

districts where Plaintiff's [sic] or Defendants reside (none of which are in Tennessee)." (Id. at PageID 225.)  Plaintiffs argue their claims are substantially connected to this forum because "this District is one in which tortious claims presented have a harmful impact upon specific plaintiffs." (ECF No. 25-1 at PageID 267.)  Those specific plaintiffs are Will and Willard. (See id.)  Plaintiffs also assert that "[n]owhere is the litigation of alleged fallacious and malicious language in the Vastrick Article more relevant than a forum state in which Mr. Vastrick himself purports a primary business address, and in which he actively competes for business against plaintiffs named herein." (Id.)

For the reasons stated below, the Court finds venue is improper for all of Plaintiffs' claims because none of the scenarios enumerated in § 1391(b) are satisfied.

Because Defendants are not residents of Tennessee, they do not meet the first § 1391(b) scenario under the statute.  See 28 U.S.C. § 1391(b)(1) ("A judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located.").  Defendant ABA is considered a resident in any judicial district where it is subject to personal jurisdiction when the action is commenced.  28 U.S.C. § 1391(c).  As discussed above, the ABA resided in Illinois and not in the Western District of Tennessee when the action commenced.  Defendant Vastrick resides in Florida.  (See ECF No. 25-1 at PageID 261 (Vastrick "has lived in Florida since 1998 . . . [and] testified under oath in prior court appearances that he resides in Florida . . . .).)  Thus, the Court finds § 1391(b)(1) does not justify venue in this District.

For the second subpart, the Court does not find that a substantial part of the events giving rise to the claims occurred in Tennessee.  28 U.S.C. § 1391(b)(2) ("[A] judicial district

in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated"). Plaintiffs seek relief for damage to their non-Tennessee "local and national reputation[s] as [ ] forensic document examiners"[6] (see ECF No. 1 at PageIDs 19, 59-60 ), yet bring this action in Tennessee on the basis that a small portion of *The Judge's Journal*'s circulation is in Tennessee (ECF No. 25-1 at PageID 264), and some undefined injury by a single plaintiff may have been felt here (see ECF No. 25-6 ¶ 4). Plaintiffs' resort to a "nexus" theory illustrates the difficulty of fixing on a single district as the place of injury when the injury is a geographically-diffuse, multistate claim.

The evidence suggests the acts giving rise to liability did not predominantly take place in the Western District of Tennessee. Defendant Vastrick did not write his article in Tennessee, nor did he send it to Tennessee for publication. (ECF No. 17-2 ¶ 21.) The majority of editing and publication was done in Illinois or Pennsylvania, and none was done in Tennessee. (ECF No. 17-1 at PageID 224.) *The Judge's Journal* is disturbed nationwide (ECF No. 1 ¶ 14), and only 0.02% of that circulation reaches Tennessee (ECF No. 25-1 at PageID 264). Accordingly, Plaintiffs fail to satisfy § 1391(b)(2) because the Western District of Tennessee is not the district in which a substantial part of the conduct giving rise to the claims occurred.

Because the ABA is a resident of Illinois and a substantial part of the events giving rise to the claim occurred in Illinois—the receipt, edit, and publication of the Vastrick Article—subpart three is not satisfied. See § 1391(b)(3) (stating that venue is proper in the

---

[6] No plaintiff is from Tennessee, thus any injury here amounts to damage to "national reputation." (See ECF No. 1 ¶¶ 1-10.)

forum district if subparts (1) and (2) cannot be satisfied by another district and at least one defendant is subject to personal jurisdiction in forum district). Additionally, Defendant Vastrick does not oppose transfer to Illinois, although he resides in Florida. Accordingly, this subpart of the venue statute does not justify venue in this District.

Having found that none of the subparts of § 1391(b) are satisfied, the Court concludes that venue is improper as to all of Plaintiffs' claims. The Court next determines whether dismissal or transfer is proper under 28 U.S.C. § 1406(a).

**4.      Transfer Under 28 U.S.C. § 1406(a)**

Although Defendants moved for dismissal based on improper venue, in lieu of dismissal, this Court may, "in the interest of justice, transfer [this] case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Due to the age of this action, and to spare Plaintiffs the delay and expense involved in re-filing this action and re-serving Defendants, the Court finds that the interests of justice weigh in favor of transfer to a proper venue instead of outright dismissal. To that end, the Court finds that this action could have been brought in the Northern District of Illinois as venue would have been proper there under 28 U.S.C. § 1391. Accordingly, the Court finds that transfer to the Northern District of Illinois is appropriate under 28 U.S.C. § 1406(a).

**E.      Legal Standard: Transfer Under 28 U.S.C. § 1404**

Defendants also move in the alternative for transfer of this action to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). The Court need not address this argument because venue is improper as to all Plaintiffs' assert claims. Out an abundance of caution, however, the Court assesses transfer under § 1404(a), assuming venue is proper.

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." The Court has broad discretion under § 1404(a) to transfer cases on an individual basis to protect litigants, witnesses, and the public against unnecessary expense and inconvenience. Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); Van Dusen v. Barrack, 376 U.S. 612, 616 & 622 (1964).

In determining whether to transfer a case under § 1404(a), the court must first determine whether the claim could have been brought in the transferee district. 28 U.S.C. § 1404(a) (allowing transfer to any other district in which the claim "might have been brought"). Then the inquiry is guided by public- and private-interest factors set out by the Supreme Court in Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947). The private-interest factors assess the convenience of the parties and witnesses, plaintiff's choice of forum, the locality of material events, and the relative ease of access to sources of proof. See Hefferan v. Ethicon Endo–Surgery Inc., 828 F.3d 488, 498 (6th Cir. 2016) (quoting Gulf Oil, 330 U.S. at 508; citing Van Cauwenberghe v. Biard, 486 U.S. 517, 528 (1988)). The public-interest factors include:

> 'administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.'

Hefferan, 828 F.3d at 500 (quoting Piper Aircraft Co v. Reyno, 454 U.S. 235, 241 n. 6 (1981))

A plaintiff has the privilege of selecting an advantageous venue so long as it is consistent with jurisdictional and venue limitations. Atl. Marine Constr. Co. v. U.S. Dist.

Court for the W. Dist. of Tex., 134 S. Ct. 568, 581 (2013). But "[w]here the plaintiff does not reside in the chosen forum[,] courts assign less weight to the plaintiff's choice." Means v. United States Conference of Catholic Bishops, 836 F.3d 643, 651 (6th Cir. 2016) (internal quotation marks omitted).

Movant's "burden under § 1404(a) is to demonstrate by a preponderance of the evidence that a change of venue to the transferee district is warranted." Cornerstone Sys., Inc. v. Prestress Servs. Indus. of Tennessee, LLC, No. 2:15-CV-02255-JPM-cgc, 2016 WL 3676829, at *2 (W.D. Tenn. July 7, 2016).

**F.      Analysis: Transfer Under 28 U.S.C. § 1404**

        **1.      Proper Venue**

Because venue is improper in the Western District of Tennessee (see Part D), the Court considers whether the Northern District of Illinois would have been a proper venue if the instant action had been initiated there. See 28 U.S.C. § 1404(a). Defendants assert that the Northern District of Illinois would have had proper venue "because Defendant ABA 'resides' in Chicago, Illinois, and 'a substantial part of the events or omissions giving rise to the claim' occurred in Illinois." (ECF No. 17-1 at PageID 226l; see 28 U.S.C. § 1391(b)(1)-(2).) Although Plaintiffs argue the Western District of Tennessee is a proper venue, they do not dispute that the Northern District of Illinois would have had proper venue if the instant action had been initiated there. Rather, Plaintiffs concede that "transfer of venue to the Northern District of Illinois is predicated upon the Defendant's actions of creating and publishing the subject article. . . ." (ECF No. 25-1 at PageID 259.) The Court finds the instant action could have been brought in the Northern District of Illinois.

Therefore, the only remaining issue is whether the balance of the private- and public-factors favors transfer to the Northern District of Illinois.  The Court addresses the factors separately to determine whether transfer to the Northern District of Illinois is proper pursuant to § 1404(a).

### 2. Private Interest Factors

#### a. The Plaintiffs' Choice of Forum

Because none of the named plaintiffs reside in Tennessee, the Court "assign[s] less weight to [their] choice."  Means v. United States Conference of Catholic Bishops, 836 F.3d 643, 651 (6th Cir. 2016) (internal quotation marks omitted).   Plaintiffs' choice thus weighs slightly against transfer of venue.

#### b. The Situs of Material Events

The Court finds that the location of material events weighs in favor of transfer to the Northern District of Illinois, where a substantial portion of the events giving rise to the claims occurred.  (See Part D.)

#### c. The Relative Ease of Access to Sources of Proof

The Court finds that the location and access to sources of proof is a neutral factor, because the majority of evidence presented is available electronically.  Plaintiffs agree, asserting that "[a]pplicable evidence and information relevant to this cause are just as conveniently transmitted and accessed in Tennessee as in Illinois."  (ECF No. 25-1 at PageID 270.)

### d.     The Convenience of the Parties

The Court finds the convenience of the parties weighs in favor of transfer of venue. Plaintiffs purport to have "no vehicle for legal representation in Chicago." (Id. at PageID 271.)  Plaintiffs allege that they attempted and failed to obtain Chicago-based counsel, and hypothesize that their Tennessee counsel may be denied *pro hoc vice* admittance.  (ECF No. 25-9 at PageID 409.)  Plaintiffs' concerns, however, do not amount to a true inconvenience that weighs against the transfer of venue.  There are many attorneys in Chicago, and there is no proof that Plaintiffs' current counsel will be denied *pro hac vice* admittance in the Northern District of Illinois.

Plaintiffs also contend that litigation in Tennessee will be less expensive than litigation in Chicago.  (ECF No. 25-1 at PageID 271.)  This Circuit recognizes "[t]he list of private-interest factors includes a catch-all for 'practical problems that make trial of a case easy, expeditious and inexpensive.'"  Hefferan, 828 F.3d at 499 (quoting Gulf Oil, 330 U.S. at 508).  But "this factor receives less weight when a plaintiff does not demonstrate its inability to shoulder the cost of litigating in the alternative forum."  Hefferan, 828 F.3d at 499.  That is the case here.  Plaintiffs do not express an "inability to shoulder the cost of litigating in" the Northern District of Illinois, but make a conclusory remark that litigation in Tennessee will be less expensive.  (ECF No. 25 at PageID 271.)   The evidence shows, however, no parties or witnesses reside in Tennessee, while some of both reside in Illinois.  (ECF Nos. 1 ¶¶ 1-10, 64; 17-1 at PageID 224.)  Accordingly, the cost of litigation for Plaintiffs is unlikely to change between a Tennessee and Illinois venue, but may render the proceedings more inexpensive as a whole in an Illinois venue.  Thus, the financial and practical hardships associated with litigation here weigh in favor of a transfer of venue to the Northern District of Illinois.

### e. The Convenience of Witnesses

The Court finds the convenience to witnesses factor weighs in favor of transfer to the Northern District of Illinois. While convenience to party witnesses is an important consideration, "[i]t is the convenience of non-party witnesses . . . that is the more important factor and is accorded greater weight." Cornerstone, 2016 WL 3676829, at *4. The ABA is a citizen of Illinois, and Vastrick is a citizen of Florida. (ECF No. 17-1 at PageID 222.) Plaintiffs are citizens of Texas, California, Missouri, New York, North Carolina, Ohio, and Wisconsin. (See ECF No. 1 ¶¶ 1-10, 64.) The convenience of party witnesses therefore weighs slightly in favor of transfer to the Northern District of Illinois where some party witnesses reside. As to non-party witnesses, Defendants assert that "non-party witnesses to this matter are either in Chicago or in other non-Tennessee locations. . . ." (ECF No. 27 at PageID 475.) Plaintiffs do not appear to dispute this assertion. Thus, the convenience of the non-party witnesses weighs in favor of transfer to the Northern District of Illinois.

Balancing each of the above factors, the Court finds the private-interest factors weigh in favor of transfer to the Northern District of Illinois.

### 3. Public-Interest Factors

Neither party has devoted substantial attention to examining the public-interest factors relevant to Defendants' venue transfer motion in this case. The Court nonetheless assesses each factor in turn.

### a.     Local Interest in Deciding a Local Controversy

"The primary local-interest considerations are the parties' connections to the local forum and the location of the injury." Hefferan, 828 F.3d at 500.   The parties' connections here are attenuated.  Defendant Vastrick does some business in Tennessee as a document examiner, but resides in Florida.  (ECF No. 25-1 at PageID 258.)  No named plaintiffs reside in Tennessee.  (ECF No. 1 ¶¶ 1-10.)  Of the eight named plaintiffs, two assert they advertise business in Tennessee.  (See ECF Nos. 25-6 – 25-7.)   From the two plaintiffs who advertise in Tennessee, only one asserts she has conducted business in Tennessee.  (ECF No. 25-6 ¶ 6.) It is unclear whether any injury occurred to any of the named plaintiffs in Tennessee. Plaintiffs' Complaint also alleges that each of their local and national reputations has been adversely affected by the publication of the Vastrick Article, rather than any specific reputation in Tennessee.  (See ECF No. 1 ¶¶ 64, 155.)   Thus, it appears the Plaintiffs' connection in Tennessee is no greater than it would be in their own locality or another state.

The Court also finds the State of Tennessee's interest in this suit is slight.  Though Tennessee has an interest in protecting nonresidents from libel's reputation-diminishing effects within the state, the evidence here does not establish whether the two plaintiffs here who testified that they conduct some business in Tennessee experienced actual damage or injury in Tennessee.  (See ECF Nos. 25-6 – 25-7.)  Additionally, no party or alleged witness is a citizen of Tennessee.  (See ECF No. 1 ¶¶ 1-17.)   The ABA staff members involved in publishing *The Judge's Journal* are located either in Illinois or Pennsylvania.  (ECF No. 17-4 ¶¶ 1-8.)  If this Court were to decline to assert jurisdiction over the ABA here, Plaintiffs could sue the ABA in Illinois.  Although Plaintiffs express concern about obtaining local counsel in Illinois (ECF No. 25 at PageID 255), the Court is not persuaded that a federal court in Illinois

is any less capable of awarding any relief as to which Plaintiffs may be entitled. In contrast to the State of Tennessee, the Court finds the State of Illinois has a substantial interest in this suit. The State of Illinois's interest lies in discouraging the print, publication, and distribution of written material that contains false, misleading, and/or harmful information. The Vastrick Article was edited, published, and originally distributed from an Illinois location. Thus, the State of Illinois's interest in determining this controversy is far greater than the State of Tennessee's minimal interest in determining this controversy.

### b. Conflict of Laws

The practice in the Northern District of Illinois is for the "transferee court hearing a case on grounds of convenience [to] apply the choice of laws rule of the transferor jurisdiction. . . . [and] 'a federal district court sitting in diversity must apply the choice of law rules of the forum state.'" Putzier v. Ace Hardware Corp., 50 F. Supp. 3d 964, 973 (N.D. Ill. 2014) (citing Barron v. Ford Motor Co. of Can. Ltd., 965 F.2d 195, 197 (7th Cir.1992); quoting Trumpet Vine Invs., N.V. v. Union Capital Partners I, Inc., 92 F.3d 1110, 1115 (11th Cir.1996)). Accordingly, Tennessee's choice of law rules would govern if this case were transferred to the Northern District of Illinois. Transfer in this case would thus not create unnecessary problems to the parties by invoking new and conflicting law.

### c. Jury Duty

This inquiry assesses the burden of imposing jury duty on people of a community having no connection with the litigation. The Court is unable to find that this action has "no connection" to this district. Although unclear, the Plaintiffs' could have actual injuries in this district. But this case is also connected to the Northern District of Illinois, where the ABA

resides and where the Vastrick Article was edited and published.   The evidence does not suggest that imposing jury service on residents in this district, or the Northern District of Illinois, would unduly burden the local community.   Because both districts have a connection to the action and it would not burden the local community by imposing jury service, the Court finds this factor is neutral.

Balancing each of the public-interest factors, the Court finds the public-interest factors do not weigh in favor of a Tennessee venue in this action.

**4.      Transfer under 28 U.S.C. § 1404(a)**

As explained above, the Court has determined that each of the private- and public-interest factors relevant to the venue transfer inquiry either has neutral impact, or weighs in favor of transferring this action to the Northern District of Illinois for resoluation.  The Defendants bear the burden of demonstrating by a preponderance of the evidence that a change of venue to the transferee district is warranted.  Defendants have satisfied that burden. The Court therefore finds that this matter should be transferred to the Northern District of Illinois.

**III.      CONCLUSION**

For the reasons stated above, the Court finds there is personal jurisdiction over Vastrick, but not over the ABA; venue is improper as to Plaintiffs' claims; and transfer to the Northern District of Illinois is appropriate.  The Court thus GRANTS Defendants' Motion to Dismiss or, Alternatively, to Transfer Venue, and hereby TRANSFERS this action to the Northern District of Illinois under either 28 U.S.C. § 1406(a) or § 1404(a).

**IT IS SO ORDERED**, this 9th day of February, 2017.


                                        /s/ Jon P. McCalla
                                    JON P. McCALLA
                                     UNITED STATES DISTRICT COURT JUDGE