| | | |
|---|---|---|
| BOARD OF FORENSIC DOCUMENT DOCUMENT EXAMINERS, INC., and M. PATRICIA FISHER, LYNDA HARTWICK, ANDREW SULNER, J. MICHAEL WELDON, EMILY J. WILL, VICKIE L. WILLARD, and ROBIN D. WILLIAMS, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 17 C 01130 |
| v. | ) ) ) | Judge Edmond E. Chang |
| AMERICAN BAR ASSOCIATION, THOMAS VASTRICK, STEPHANIE DOMITROVICH, and THE AMERICAN BOARD OF FORENSIC DOCUMENT EXAMINERS, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

The Board of Forensic Document Examiners, and seven of its members, allege that Thomas Vastrick defamed them by making various statements in an article appearing in *The Judges' Journal*. The Plaintiffs brought this case against Vastrick, as well as the publisher (the American Bar Association) and the article's editor (Stephanie Domitrovich).[1] Specifically, the Plaintiffs bring claims for defamation *per se*, false light invasion of privacy, false advertising under the Lanham Act, deceptive advertising under various state consumer protection

---

[1] This Court has subject matter jurisdiction over the case in light of the federal law claims, 28 U.S.C. § 1331, and supplemental jurisdiction over the accompanying state law claims, 28 U.S.C. § 1367.

statutes, and civil conspiracy. R. 52, Am. Compl. The Defendants move to dismiss all counts, arguing (among other things) that the challenged statements do not identify the Plaintiffs as the target of the criticism, and that the statements are mere expressions of opinion, rather than assertions of fact. R. 61, Def. Mot. Dismiss; R. 65, Def. Supp. Br. For the reasons discussed in the Opinion, the motion to dismiss is granted.

## I. Background

For purposes of this motion, the Court accepts as true the allegations in the Amended Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Documents attached to a complaint are considered part of the complaint for all purposes. Fed. R. Civ. P. 10(c).

The Board of Forensic Document Examiners, Inc. (the Board) certifies experts in the forensic specialty of document examination. Am. Compl. ¶ 2. Specifically, certified document examiners—"diplomates" as they are called—examine and compare handwriting, primarily for purposes of litigation. *Id.* ¶¶ 3, 30. The Board currently has twelve certified diplomates, including each of the individual Plaintiffs: Patricia Fisher, Lynda Hartwick, Andrew Sulner, J. Michael Weldon, Emily Will, Vickie Willard, and Robin Williams. *Id.* ¶¶ 3-10.

The American Bar Association (ABA) is a national association of legal professionals, counting among its members many attorneys, judges, law students, and other para-professionals. Am. Compl. ¶¶ 12-13. It publishes *The Judges' Journal,* a quarterly publication distributed nationally both in print and online. *Id.*

¶¶ 14-15. Members of the Judicial Division of the ABA receive a complimentary subscription to the Journal. *Id.* ¶ 63.

In August 2015, Plaintiff Andrew Sulner received, as a member of the Judicial Division of the ABA, a pre-publication copy of the Summer 2015 edition of *The Judges' Journal.* Am. Compl. ¶ 73. He later received the print copy in the mail. *Id.* The issue, titled *Forensic Sciences – Judges as Gatekeepers*, focused on various subjects of forensic science that judges might encounter when qualifying experts. *Id.* ¶ 74; *id.* Exh. E. It included an article about handwriting comparisons done by forensic document examiners, titled *Forensic Handwriting Comparison Examination in the Courtroom*, written by Thomas Vastrick. *Id.* ¶ 76. Vastrick is a forensic document examiner certified by a *different* board, namely, Defendant American Board of Forensic Document Examiners (The American Board). *Id.* ¶ 17. Vastrick also sits on the board of the American Board and is one of its past presidents. *Id.* ¶ 17. The article was edited by Stephanie Domitrovich, who authored an introductory foreword to the issue. *Id.* Exh. E.

The article discussed what Vastrick believes are the preferred qualifications of forensic document examiners. Am. Compl., Exh. E. The Plaintiffs point to four statements that they allege are defamatory to them, based on their certifications by and affiliations with the Board. Vastrick wrote:

> [1] An appropriately trained forensic document examiner will have completed a full-time, in-residence training program lasting a minimum of 24 months per the professional published standard for training. Judges need to be vigilant of this issue. There are large numbers of practitioners who do not meet the training standard.

[2] The American Board of Forensic Document Examiners … is the only certification board recognized by the broader forensic science community, law enforcement, and courts for maintaining principles and training requirements concurrent with the published training standards. Be wary of other certifying bodies.

[3] In a section captioned, "What to look out for," the statement, "Certified by board other than the American Board of Forensic Document Examiners."

[4] In the section captioned, "What to look out for," the statement, "Member of American Academy of Forensic Sciences but not the Questioned Document Section."

Am. Comp. ¶¶ 78-90; *id.* Exh. E at 33-34.

The Plaintiffs claim these statements misled readers—that under the guise of helping judges objectively evaluate forensic document examiners, Vastrick made false and misleading statements about how to differentiate between "'true professionals' and 'unqualified' or 'lesser qualified practitioners.'" Am. Compl. ¶ 77. As discussed more fully later in this Opinion, the Plaintiffs characterize the statements as false based on the required training standards for certification, the specific backgrounds of the Plaintiffs, and the courts' previous acceptance of practitioners certified by the Board. *See, e.g., id.* Exh. A; *id.* Exh. B. Both Vastrick and Domitrovich knew that the statements in the article were false, because both knew that the Board and the American Board were each certified by the same accrediting entity, the Forensic Specialties Accreditation Board, and that the Board did abide by the published training standards for certification. Am. Compl. ¶ 91.

After reading the pre-publication copy of the article, Sulner called Domitrovich and Lisa Comforty, the managing editor of *The Judges' Journal*, to

voice his concerns about the alleged defamatory content. Am. Compl. ¶ 109. Several days later, the ABA's general counsel, Jarisse Sanborn, called on Sulner to explain in writing what he believed was defamatory. *Id.* ¶ 110. What followed was an extended letter and e-mail exchange among Sulner, Sanborn, Comforty, and Jessica Perez Simmons, who was an assistant general counsel of the ABA. During the discussions, Sulner demanded changes to the article, but the ABA refused, offering only to publish a rebuttal. *Id.* ¶¶ 110-118. Sulner did write a rebuttal article, but the ABA declined to publish it, instead returning a severely edited and diluted version to Sulner, who rejected it out of hand. *Id.* Finally, the ABA published the print-side Vastrick article with no changes and without a rebuttal. *Id.* In February 2016, the ABA published the electronic version of the article to its website with a couple of revisions to the alleged defamatory statements. *Id.* ¶ 120. It then emailed Sulner and the Board's attorney about the revisions—which it did not concede were necessary—and alerted them that the article was now posted online. *Id.*; *id.* Exh. M. The ABA did not publish any other clarifications or retractions regarding the article. *Id.* ¶¶ 123, 125. The Plaintiffs also contend that, sometime in Fall 2015, both Domitrovich and Vastrick separately circulated the article to members of the American Academy of Forensic Sciences, even though they knew that the ABA had promised to put a temporary "hold" on the publication in August 2015. *Id.* ¶¶ 109, 149-53.

The Plaintiffs also allege that there was a relevant behind-the-scenes dispute between Domitrovich and the Board. Specifically, Domitrovich was a Director on the

Forensic Specialties Accreditation Board, which had accredited both the Board and the American Board in the past. Am. Compl. ¶ 21. The Board was up for reaccreditation in 2015, and Domitrovich served as one of three members on the Forensic Specialties Accreditation Board's annual review committee. *Id.* ¶ 22. The committee recommended that the Forensic Specialties Accreditation Board *deny* the Board's reaccreditation application. *Id.* ¶¶ 22, 225. According to the Plaintiffs, the ABA, Domitrovich, and Vastrick were emboldened to publish the Vastrick article as written—despite Sulner's vocal objections—because they believed that de-accreditation was imminent and would render Sulner's complaints toothless. *Id.* ¶ 226.

On the basis of those allegations, the complaint sets out ten counts. Counts 1 and 3 assert claims for defamation per se and false light invasion of privacy on behalf of all Plaintiffs against all Defendants (Count 1) and on behalf of Sulner against all Defendants (Count 3). Am. Compl. ¶¶ 166, 190. In Counts 2 and 4, all Plaintiffs allege a false advertising claim, under the Lanham Act, against all Defendants (Count 2), and Sulner separately alleges the same type of claim against all Defendants (Count 4). *Id.* ¶¶ 182, 200. In Count 5, Fisher alleges violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, and its False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq. Id.* ¶ 209. In Count 6, Sulner alleges a violation of New York's Consumer Protection from Deceptive Trade and Practices Act, N.Y. Gen. Bus. Law § 349 *et seq. Id.* ¶ 212. In Count 7, Will alleges a violation of North Carolina's statute against deceptive business practices,

N.C. Gen. Stat. § 75-1.1. *Id.* ¶ 215. In Count 8, Willard alleges a violation of Ohio's Deceptive Trade Practices law, Ohio Rev. Code § 4165.01 *et seq. Id.* ¶ 218. In Count 9, Williams alleges violations of Illinois's Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.*, and its Consumer Fraud Act, 815 ILCS 505/1 *et seq. Id.* ¶ 221. Finally, in Count 10, all Plaintiffs allege civil conspiracy to defame the Board against all Defendants. *Id.* ¶ 228.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above

the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### III. Analysis

### A. Choice of Law

The threshold question is to figure out which state's law applies to which claim, and indeed, which issue. But this case was transferred from the Western District of Tennessee, R. 30, 02/09/17 Order on Mot. to Transfer, so there is a step even before that threshold: which forum's choice-of-law rules apply, Tennessee or Illinois? The transfer order in this case explains that Tennessee's choice of law rules might apply, because the transferee court (Illinois in this case) generally applies the choice of law rules of the transferor jurisdiction (Tennessee) if the case had proper venue there to start with. *Id.* at 35; *see Dobbs v. DePuy Orthopedics, Inc.,* 842 F.3d 1045, 1048 (7th Cir. 2016). But if venue was *improper* in the transferor district, then it makes sense to apply the transferee forum's choice-of-law rules, because the case should not have started out in the transferor district in the first place. And there is a risk that litigants will forum-shop for a favorable choice-of-law rule by filing in an improper venue, so to avoid that, the transferee district's choice-of-law rule should trump that of the rule of the improper venue.

Here, the Western District of Tennessee held that venue in Tennessee was *improper* for the Plaintiffs' claims. 02/09/17 Order on Mot. to Transfer at 2 (noting none of the venue scenarios applied under 28 U.S.C. § 1391(b)). Because the

Western District of Tennessee Court transferred the case for improper venue under 28 U.S.C. § 1406(a),[2] and only discussed a transfer for convenience under 28 U.S.C. § 1404 "[o]ut of an abundance of caution," 02/09/17 Order on Mot. to Transfer at 28, this Court will apply Illinois's choice-of-law rules.

Illinois has adopted the Restatement (Second) of Conflict of Laws § 145, which says the law of the state with the "most significant relationship to the occurrence and the parties" will apply when a conflicts-of-law issue arises. *See also Ingersoll v. Klein*, 262 N.E.2d 593, 596 (1970). Typically in tort actions, the state with the most significant relationship is the place where the injury occurs. For defamation claims, an alleged victim's home state usually has the most significant relationship to the claim, because that is where a person will suffer the most damages arising from reputational harm. *See, e.g.*, *Kamelgard v. Macura*, 585 F.3d 334, 341, 344 (7th Cir. 2009). Because each of the Plaintiffs live in different states, R. 62, Def. Br. at 2 n.3, in the event of a conflict of laws, the Court must apply the law of that Plaintiff's domicile to his or her claims. *Cook v. Winfrey*, 141 F.3d 322, 329 (7th Cir. 1998) ("in multistate defamation cases, Illinois cases indicate that the applicable law is that of the victim's domicile, period") (cleaned up). In determining whether a conflict exists, the Court looks at the problem on an issue-by-issue basis, because Illinois follows the doctrine of dépeçage. *See* Restatement (Second) of

---

[2]It is true that, in its conclusion, the Western District of Tennessee stated that it transfers the action "to the Northern District of Illinois under either 28 U.S.C. § 1406(a) or § 1404(a)." 02/09/17 Order on Mot. to Transfer at 36. But it is clear that the § 1404(a) analysis was only conducted out of an abundance of caution.

Conflict of Laws § 145 cmt. d (1971). Where no conflict exists, the Court will apply the law of the forum state, that is, Illinois.

## B. Counts 1 and 3: Defamation and False Light

All Plaintiffs allege defamation and false light invasion of privacy against all Defendants based on four specific statements made by Vastrick in the article. A statement is defamatory if it causes reputational harm, lowering that "person in the eyes of the community." *Bryson v. News American Publ'ns, Inc.,* 672 N.E. 2d 1207, 1214 (Ill. 1996). To successfully state a defamation claim, a plaintiff must "allege facts establishing that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Bianchi v. McQueen*, 58 N.E.3d 680, 701 (Ill. App. Ct. 2016) (citing *Solaia Tech., LLC v. Specialty Publ'g Co.*, 852 N.E.2d 825, 838 (Ill. 2006)). A publication that is defamatory on its face is actionable as defamation *per se*.[3] Only certain types of statements are actionable *per se,* and plaintiffs alleging *per se* defamation do not need to plead actual damage to their reputations. *See Solaia,* 852 N.E.2d at 839 (citing *Owen v. Carr*, 497 N.E.2d 1145, 1147 (1986)). Under Illinois common law, those categories of statements include "words that impute an inability to perform or want of integrity in the discharge of duties of office or employment," and "words that prejudice a party, or impute a lack of ability, in his or her trade, profession, or business." *Bryson,* 672

---

[3]A statement can be actionable even if it is not defamatory on its face. If extrinsic facts prove that a statement is defamatory, and the plaintiff is able to prove actual damages, then the statement qualifies as defamation *per quod*. *See Bryson,* 672 N.E.2d at 1214.

N.E.2d at 1214-15. Publications that defame someone's ability to do her job are considered "so obviously and materially harmful to the plaintiff that injury to her reputation may be presumed." *Id.* at 1214.

The Plaintiffs allege that Vastrick's article contained four sets of statements that, according to the Plaintiffs, identifiably defamed the Board, each individual Plaintiff by implication, and Sulner personally. As described by the Plaintiffs, the four sets of statements are as follows (the bold-face emphases are supplied by the Plaintiffs):

> [1] An appropriately trained forensic document examiner will have completed **a full-time, in-residence** training program lasting a minimum of 24 months **per the professional published standard for training**. Judges need to be vigilant of this issue. There are large numbers of practitioners who do not meet the training standard.

> [2] **The American Board of Forensic Document Examiners … is the only certification board recognized** by the broader forensic science community, law enforcement, and courts **for maintaining principles and training requirements concurrent with the published training standards**. **Be wary of other certifying bodies**.

> [3] In a section captioned, "What to look out for," the statement, "**Certified by board other than the American Board of Forensic Document Examiners**."

> [4] In the section captioned, "What to look out for," the statement, "**Member of American Academy of Forensic Sciences but not the Questioned Document Section**."

Am. Comp. ¶¶ 78-90; *id.* Exh. E at 33-34; *see* R. 66, Pl. Resp. Br. at 8 (boldface in original).

In their motion to dismiss, the Defendants argue that the Plaintiffs cannot sustain defamation *per se* claims for those four sets of statements because (1) the

allegedly defamatory statements are not "of and concerning" the Plaintiffs (that is, the statements do not sufficiently identify the Plaintiffs as the subject of the criticisms); (2) the statements are constitutionally protected opinion, and not assertions of fact; and (3) to the extent the statements are factual, they are substantially true. Def. Br. at 3.

## 1. "Of and concerning" the Plaintiffs

To qualify as actionable defamation, a statement must sufficiently identify the person who is being criticized. *See Vantassell-Matin v. Nelson*, 741 F. Supp. 698, 710 (N.D. Ill. 1990) (applying Illinois law).[4] The measuring stick is the law's ubiquitous "reasonable" person: a "reasonable individual" reading the statement must be able to "identify" the particular plaintiff as the subject. *Id.* So if a statement can be reasonably interpreted as referring to someone else, it fails to qualify as even being a statement targeting the plaintiff. *Solaia*, 852 N.E.2d at 839; *see also Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 927 (7th Cir. 2003). And if "extrinsic facts and circumstances" are needed to show that a statement refers to a particular plaintiff, it is not "injurious to him on its face"—and thus does not qualify as defamation *per se. Schaffer v. Zekman*, 554 N.E.2d 988, 991 (Ill. App. Ct. 1990); *Lansing v. Carroll*, 2015 WL 3962345, at *4 (N.D. Ill. June 29, 2015).

---

[4]With one exception, Illinois law applies on the identification issue because no conflict exists amongst the various state laws. As discussed later in the Opinion, the exception is Sulner, because New York common law allows for extrinsic facts in proving whether a statement is "of and concerning" a particular person. Under the doctrine of dépeçage, *see Curtis v. TransCor Am., LLC*, 2012 WL 1080116, at *4 (N.D. Ill. Mar. 29, 2012) (citing *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 898 (Ill. 2007)), Sulner gets the benefit of that feature of New York law.

In this case—at the risk of stating the obvious—none of the statements at issue specifically identify any of the Plaintiffs by name. Remember that this is the first statement, which describes Vastrick's view of minimum training standards:

> An appropriately trained examiner will have completed a full-time, in-residence training program lasting a minimum of 24 months per the professional published standard for training. Judges need to be vigilant of this issue. There are large numbers of practitioners who do not meet the training standard.

Pl. Resp. Br. at 8 (boldface removed). This passage does not identify any particular person by name, let alone any of the Plaintiffs. It would take outside evidence beyond the face of the statement to connect any of the Plaintiffs to it, so the statement does not qualify as defamation *per se. See Schaffer,* 554 N.E.2d at 991.

In response, the Plaintiffs argue that this statement (and the other three) qualifies as "group" defamation. Pl. Resp. Br. at 13. Under this theory, a statement that refers to a group—rather than to a specific person by name—still qualifies as identifying the persons in the group if the group is "sufficiently small and the words may reasonably be understood to have personal reference and application to any member of the group." *Missner v. Clifford*, 914 N.E.2d 540, 556 (Ill. App. Ct. 2009) (citing Restatement (Second) of Torts § 564A cmt. b (Am. Law Inst. 1977)). The Plaintiffs argue that their group, at around 12 diplomates certified by the Board, Am. Compl ¶ 52, is sufficiently small for actionable group defamation, Pl. Resp. Br. at 13.

The problem with applying the group-defamation identification theory to the first statement is that the passage can reasonably be interpreted to refer to *any*

forensic document practitioner who has not completed the specified training program—not just the twelve examiners certified by the Board. The statement does not target *only* the Board's diplomates as inappropriately trained. Indeed, the passage even goes on to say, "There are *large* numbers of practitioners who do not meet the training standard." Am. Compl., Exh. E at 33 (emphasis added). The group defamation theory falls short of solving the identification problem.

The second statement suffers from the same flaws. When describing the American Board, Vastrick wrote:

> The American Board of Forensic Document Examiners … is the only certification board recognized by the broader forensic science community, law enforcement, and courts for maintaining principles and training requirements concurrent with the public training standards.

Pl. Resp. Br. at 8 (boldface removed). Once again, Vastrick does not explicitly name any Plaintiff. Instead, this statement promotes the American Board while refraining from explicitly naming the Board of Forensic Document Examiners. In response, the Board argues—in its response brief—that the statement *must* be referring to the Board, because it is the only other organization that certifies document examiners. Pl. Resp. Br. at 10 ("There are only two certification boards for forensic document examiners …"). The problem with this contention is that, in fact, the Amended Complaint does not actually allege it. In reality, the Amended Complaint alleges only that the American Board and the Board are the two (and only two) organizations accredited by the Forensic Specialties Accreditation Board. Am. Compl. ¶¶ 24, 49. Nowhere does the Amended Complaint allege that the American Board and the Board are the only two organizations that certify document

examiners.[5] So the Amended Complaint does not justify an inference that the group defamation theory of identification apples.

That reason disqualifies the third statement as well. Remember that, in a section entitled, "Gatekeeping Tips from a Practitioner," the article tells readers "What to look for" in "the true professional" versus "What to look out for" in catching a "lesser-qualified practitioner." Am. Compl., Exh. E at 34. In the "What to look out for" list, the article says, "Certified by board other than American Board of Forensic Document Examiners." *Id.* Once again, the Board itself is not explicitly identified. And because the Amended Complaint fails to allege that the Board is the only other certifying board (as discussed just above), the group defamation theory of identification is inapplicable.

On the fourth and final statement, Sulner complains that he is the specific target. This statement is on the "What to look out for" list: "Member of American Academy of Forensic Sciences but not the Questioned Documents Section." Am. Compl., Exh. E at 34. Taking all the allegations in the Amended Complaint as true, Sulner is the only certified forensic document examiner "known to be" a member of the American Academy of Forensic Sciences but not a member of the Questioned

---

[5]In its reply brief, the defense attached exhibits comprising websites of other organizations that, according to the defense, also issue certifications to document examiners. R. 67, Def. Reply Br., Exhs. A-G. The Plaintiffs argue that the exhibits cannot be considered at the dismissal motion stage, R. 70, Pl. Am. Mot. Strike, but that is beside the point. There is no need to refer to the reply's exhibits because it is the Amended Complaint that fails to affirmatively allege that the American Board and the Board are the only two certifying boards. (As a practical matter, even if the dismissal motion had been denied, the reply's exhibits might have reasonably formed the basis for a request to limit discovery to the existence of other certifying boards, and then considering an early summary judgment motion on the identification issue.)

Documents Section. Am. Compl. ¶ 122. Rather, because Sulner is an attorney and members of the Academy can only belong to one section, he is a member of the Jurisprudence section. *Id.* ¶¶ 57, 103. Sulner argues that, under New York law, all of this outside evidence is fair game in identifying him as the target of the statement. *See Three Amigos SJL Rest., Inc. v. CBS News, Inc.*, 132 A.D.3d 82, 89 (N.Y. App. Div. 2015). But the statement is nowhere near as precise as Sulner says it is. Instead, *anyone* who is a member of the American Academy of Forensic Sciences but not the Questioned Documents Section fits into the statement's purview, and Sulner does not allege that he is the only person who fits the literal terms of the statement.

What's more, the reasonable reader would not undertake the chain of reasoning that Sulner proposes. *See Solaia*, 852 N.E.2d at 839 ("a court must interpret the words of the statement as they appear to have been used and according to the idea they were intended to convey to the reasonable reader") (cleaned up). Yes, under New York law, Sulner may refer to extrinsic evidence to prove that he is the subject of the statement—but that does *not* mean that a reasonable reader somehow has access to all that information and thus would interpret the statement to target him. Sulner asks too much of the pleading-stage inferences in his favor by arguing that a reader would know that: the American Academy of Forensic Sciences limits each person to membership in only one of its sections; Sulner was an attorney, so he joined the Jurisprudence section; *and* Sulner was the only attorney-member also certified in document examination. Even if some

extraordinarily enterprising reader of *The Judges' Journal* pieced all of that together, where a "speaker is meticulous enough to preserve the anonymity of an individual … the speaker should not be exposed to liability for defamation because someone ferrets out the identity of the individual." *Vantassell-Matin*, 741 F. Supp. at 710. Even giving Sulner the benefit of the pleading-stage standard and of New York law on extrinsic evidence, the fourth statement (like the first three) is not sufficiently alleged to identify him as its target. All in all, the defamation claims fail on the identification element.

## 2. Non-actionable Opinion

There is another reason why the statements at issue cannot be the premise of defamation *per se* claims: the statements are constitutionally protected expressions of *opinion*, rather than factual assertions. The First Amendment protects the expression of opinion. *Solaia*, 852 N.E.2d at 839 ("Under the First Amendment there is no such thing as a false idea.") (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40 (1974)). So defamation claims cannot be premised on an opinion. *Id.* To be sure, a speaker cannot just couch a "false assertion of fact" in "terms of an opinion" and thereby evade liability. *Bryson*, 672 N.E.2d at 1220 (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990)). A statement is only protected as an opinion if it "cannot be reasonably interpreted as stating actual fact." *Solaia,* 852 N.E.2d at 840 (citing *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 208-09 (Ill. 1992)). The Illinois Supreme Court evaluates the opinion-versus-fact dichotomy by considering several factors: whether the statement has a precise and readily

understood meaning; whether the statement is verifiable; and whether the statement has a literary or social context that shows that it is a factual assertion rather than an opinion. *Solaia*, 852 N.E.2d at 840. Mixed expressions of opinion and fact are actionable. *Quality Granite Const. Co., Inc. v. Hurst-Rosche Engineers, Inc.*, 632 N.E.2d 1139, 1143 (Ill. App. Ct. 1994).

Here, Vastrick's statements comprise opinions, not facts. Consider the overall context of the statements: The Judges' Journal is, to use the Amended Complaint's description, a "scholarly" journal. Am. Compl. ¶ 14. That sets the overall stage for the article as an opinion piece, because reasonable readers (especially judges) know that scholarly journals often present one side or the other in opinionated debates. *Dilworth v. Dudley*, 75 F.3d 307, 310 (7th Cir. 1996) (considering the context of a "work of scholarship" and stating that "judges are not well equipped to resolve academic controversies"). Not surprisingly for a scholarly journal, a small-print note at the bottom of the issue's Table of Contents contains a disclaimer, "Articles represent the *opinions* of the authors alone." Am. Compl., Exh. E at .pdf page 5 (emphasis added). And the statements appear in an article that explicitly presents itself as offering *suggestions* for judges to consider in evaluating the expertise of document examiners. For example, the lead-up introduction for the listing of "What to look for" and "What to look out for" employs the language of opinion, not hard facts:

> While judges are responsible for being court gatekeepers, I, as a practicing forensic document examiner, would like to respectfully *suggest* ways to differentiate between the *true* professional and the *lesser*-qualified practitioners.

Am. Compl., Exh. E at 34 (emphases added). Indeed, this entire section of the article is entitled, "Gatekeeping *Tips* from a Practitioner." *Id.* (emphasis added). So the overall context is an author engaged in a scholarly presentation of his viewpoint on document examiners.

Next, examining each specific statement in turn, take the pertinent part of the first one: "An *appropriately* trained forensic document examiner will have completed a full-time, in-residence training program lasting a minimum of 24 months per the professional published standard for training." Am. Compl, Exh. E at 33 (emphasis added). The key word is "appropriately." That word signals to the reader that Vastrick is describing his opinion of what is the appropriate training for a document examiner. To resist this characterization, the Plaintiffs focus on the latter half of the statement, arguing that Vastrick is saying that the professional published standard requires a "full-time, in-residence training program lasting a minimum of 24 months." Am. Compl, Exh. E at 33. In reality, the Plaintiffs contend, the standard (published by ASTM International, formerly known as the American Society for Testing and Materials) actually says that the training program "shall be the *equivalent*" of 24 months full-time training. Am. Compl., Exh. A, ASTM E2388-11, § 6.1 (emphasis added). But Vastrick's omission of the word "equivalent" does not somehow transform the opinion into a defamatory fact against the Plaintiffs.

First, the most natural interpretation of the statement still remains that Vastrick is opining on what he believes is the "appropriate[]" level of training for a document examiner. Second, the Plaintiffs are packing a lot of meaning into the

19

word "per" when arguing that Vastrick's phrase, "*per* the professional published standard" meant that the standard *exclusively* requires 24 months full-time training. Nothing in the statement actually makes that assertion. A reader reasonably could interpret Vastrick as saying that the 24 months full-time training *meets* the published standard—which it does—without taking the extra step that he was saying it is the exclusive way to meet the standard. Third and last, even if the statement were interpreted as saying that the ASTM standard requires 24 months full-time training, that statement says nothing about the *Plaintiffs*. It would just be a mistaken (or, more precisely, incomplete) assertion about the ASTM standard— not about the Plaintiffs.

Moving on to the second statement, remember that here Vastrick was promoting the American Board's standing in the community:

> The American Board of Forensic Document Examiners … is the only certification board *recognized* by the broader forensic science community, law enforcement, and courts for maintaining principles and training requirements concurrent with the published training standards. Be wary of other certifying bodies.

Am. Compl., Exh. E at 33 (emphasis added). Again, this is just an expression of Vastrick's opinion, rather than a verifiable, objective fact. The key word this time is "recognized." There is really no way (and the Plaintiffs offer none) to verify—as a factual matter—the American Board's "recognition" in the community. What's more, the statement's breadth—saying that the "scientific community, law enforcement, and courts" recognize the American Board—is so sweeping that the lack of specificity makes the statement even more difficult to verify as if it were a *fact*. To

the extent that the Plaintiffs contend that Vastrick is implying that the Board's certification is not "concurrent" with published training standards, Am. Compl, Exh. E at 33, it is not even clear what "concurrent" means in this context, let alone that it levels a defamatory accusation against the Board (which the statement does not refer to by name).

Finally, the third and fourth statements also comprise opinions. These statements appear in the "What to look out for" list. Am. Compl., Exh. E at 34. Even that prefatory title—"What to look out for"—speaks in the language of an opinion. Plus, as discussed earlier, the list appears in a section entitled, "Gatekeeping *Tips* from a Practitioner." *Id.* (emphasis added). And the sentence immediately leading up to the list merely says that Vastrick "suggests" that judges look for (or look out for) certain characteristics to distinguish between a "true" professional and "lesser"-qualified practitioners. *Id.* "Suggests," "true," and "lesser" all signify that Vastrick is expressing his opinions in offering the lists. When viewed through the lens of the pertinent factors, the statements are Vastrick's opinions, and judges can take them or leave them.[6]

### 3. False Light Invasion of Privacy

The false light invasion of privacy claims also fail for the same reason as the defamation claims. First, false light claims also require the same "of and concerning" element as defamation claims. *Muzikowski*, 477 F.3d at 907. So the

---

[6]The defense also argues that the statements are substantially true, but there is no need to address that argument in light of the Court's holding that the Amended Complaint fails to allege that the statements are about the Plaintiffs and that the statements are mere expressions of opinion.

failure of the identification element on the defamation claims is fatal as to the false light claims. The same goes for the requirement that a defamation claim be premised on an assertion of fact, rather than opinion—that too applies to false light claims. *Schivarelli v. CBS, Inc.*, 776 N.E.2d 693, 701 (Ill. App. Ct. 2002) ("As in defamation actions, statements that are expressions of opinion devoid of any factual content are not actionable as false light claims."). In light of the holding that the challenged statements express opinions, not facts, the false light claims must fail.

## B. Counts 2 and 4: Violations of the Lanham Act

Counts 2 and 4 encompass all of the Plaintiffs' claims against all of the Defendants for violations of the Lanham Act, 15 U.S.C. § 1125(a)(1). The Plaintiffs allege that the Vastrick article states or implies that the Board's forensic document examiners are "unqualified" because they are not certified by the American Board, and that those are misleading representations under the Act. Am. Compl. ¶¶ 177-78, 182. Not surprisingly, the defense asks for dismissal because the statements are constitutionally protected opinion. Def. Supp. Br. at 1-2.

The Lanham Act prohibits "false or misleading" descriptions or representations "of *fact*." 15 U.S.C. § 1125(a)(1) (emphasis added). So opinions are not targeted by the Lanham Act. Just like the analysis that applies to defamation claims, for a Lanham Act claim, the "meaning of the alleged literal falsehood must be considered in context and with reference to the audience to which the statement is addressed." *See Schering–Plough Healthcare Prods. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 513 (7th Cir. 2009). An opinion cannot be a misleading representation of

*fact. McDavid Knee Guard, Inc. v. Nike USA, Inc.*, 2010 WL 3000178, at *3 (N.D. Ill. July 28, 2010). For the same reasons discussed earlier, the challenged statements are not assertions of fact, but rather nonactionable opinion. The Lanham Act claims fail too.

### C. Counts 5 through 9: State Law Unfair Competition

Just as the Lanham Act claims fail, so must the claims premised on state unfair-competition laws. The relevant counts are premised on the laws of Illinois, California, Ohio, New York, and North Carolina (depending on where each individual Plaintiff lives). But each unfair competition statute requires that the allegedly anti-competitive statement be a *factual* statement, not an expression of opinion.[7] (Each state's unfair-competition law has that same requirement, so no conflict of laws exists.) So, again, these claims (Counts 5 through 9) do not adequately state a claim because Vastrick's statements are expressions of opinion, rather than fact.

### D. Count 10: Civil Conspiracy

Lastly, Count 10 is for civil conspiracy to defame the Board. Am. Compl. ¶ 228. The Plaintiffs allege that Vastrick, Domitrovich, and the ABA agreed to publish the article "without regard to the truth of the matter contained therein." *Id.* ¶ 226. But civil conspiracy requires an agreement to accomplish "by some concerted

---

[7]*See Dyson, Inc. v. Bissell Homecare, Inc.*, 951 F. Supp. 2d 1009, 1028-29 (N.D. Ill. 2013) ("Illinois unfair competition claims are generally resolved according to the same standard as Lanham Act claims." (citing *Neuros Co., Ltd. v. KTurbo, Inc.*, 698 F.3d 514, 523 (7th Cir. 2012))); *Nat'l Servs. Group v. Painting & Decorating Contrs. of Am.*, 2006 WL 2035465, at *2 (C.D. Cal. July 18, 2006); *Irwin Indus. Tool Co. v. Worthington Cylinders Wis., LLC*, 747 F. Supp. 2d 568, 578 (W.D.N.C. 2010); *Best v. AT&T Mobility LLC*, 2015 WL 1125539, at *7 (S.D. Ohio Mar. 12, 2015).

action" an "unlawful purpose" through a "tortious" act. *Brooks v. Ross*, 2008 WL 5082995, at *7 (N.D. Ill. Nov. 25, 2008), *aff'd*, 578 F.3d 574 (7th Cir. 2009) (quoting *Ill. Non-Profit Risk Mgmt. Ass'n v. Human Serv. Ctr.*, 884 N.E.2d 700, 711 (Ill. App. Ct. 2008)). But none of the targeted statements are defamatory, so there is no premise for a conspiracy claim. This claim is dismissed as well.

## IV. Conclusion

For the reasons discussed above, the Defendants' motion to dismiss for failure to state a claim is granted. None of the statements identify the Plaintiffs as the subject of the criticism, and all of the statements are simply expressions of opinion, not fact. To be sure, it might have been better for Vastrick to disclose in the article (or the author's note) that he is a member of the American Board, so that readers would know that he was singing the praises of an organization to which he belongs. As a matter of law, however, the challenged statements are not defamatory. Final judgment will be entered, because the Plaintiffs have already amended the complaint once, and there is no reason to think that the allegations can be amended again to overcome the barriers identified in this Opinion. The status hearing of March 6, 2018 is vacated.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: February 22, 2018